ALMON, Justice
(dissenting).
I respectfully dissent. I continue in the views I expressed in Northcom, Ltd. v. James, 694 So.2d 1329, 1338 (Ala.1997):
“[I]n a case involving a contract of adhesion, if it is not shown that the party in an inferior bargaining position had a meaningful choice of agreeing to arbitration or not, and if the superior party has reserved to itself the choice of arbitration or litigation, a court may deny the superior party’s motion to compel arbitration based on the doctrines of mutuality of remedy and un-conscionability.”
The employee handbook at issue here gives no rights to the employee and imposes no obligations on the employer, but it conditions continued employment on a requirement that the employee waive his or her constitutional rights to trial by jury, U.S. Const. Amend. VII;[8] Ala. Const.1901, Art. I, § 11,[9] and to *600 access to a judicial tribunal for a remedy by due process of law, U.S. Const. Amends. V and XIV;[10] Ala. Const.1901, Art. I, §§ 10 and 13.[11]
A contract of adhesion is one that is offered on a “take it or leave it” basis to a consumer who has no meaningful choice in the acquisition of goods or services. Northcom, at 1337. I would hold this definition applicable to employees as well as consumers, at least as to certain terms of employment, such as one that attempts to force an employee to surrender constitutional rights. I think this attempt by United Healthcare Services, Inc., to impose arbitration on its employees fits the definition of a contract of adhesion — assuming, as I do not, that any contract is created by the handbook at all.
I also think it would be unconscionable to enforce the arbitration clause in this employee handbook. United gives its employee no right or benefit for his or her “agreement” to submit any claims or disputes to arbitration. United reserves to itself the absolute right to amend or repeal any provision of its handbook, including the arbitration clause. Thus, it can litigate any claims it has against its employee, so that, as Justice Cook says, any purported promise it has made to arbitrate its claims is simply illusory.
The discussion in Northcom regarding mutuality of remedy presents a perspective from which it can be seen that, because of equitable principles applicable to all contracts, a court should not grant a motion that, in essence, seeks specific performance of an arbitration clause in a contract, where the movant would not be subject to such a remedy. If a superior party, such as an employer, can invoke specific performance of an arbitration clause in a contract of adhesion, but the inferior party, such as an employee, cannot, there is such a lack of mutuality that a court should not grant the equitable remedy of specific performance of that term of the contract. In short, it would be inequitable and, under the circumstances, unconscionable, to deprive someone of their constitutional rights to access to a court and to a jury for resolution of their claims against the party that has sought to deprive them of those rights.
Before its recent discovery of a federal policy favoring arbitration,[12] the Supreme Court aptly expressed concern:
“[T]he remedy by arbitration, whatever its merits or shortcomings, substantially affects the cause of action created by the State. The nature of the tribunal where suits are tried is an important part of the parcel of rights behind a cause of action. The change from a court of law to an arbitration panel may make a radical difference in ultimate result. Arbitration carries no right to trial by jury that is guaranteed both by the Seventh Amendment and by Ch. 1, Art. 12th, of the Vermont Constitution. Arbitrators do not have the benefit of judicial instruction on the law; they need not give their reasons for their results; the record of their proceedings is not as complete as it is in a court trial; and judicial review of an award *601 is more limited than judicial review of a trial — all as discussed in Wilko v. Swan, 346 U.S. 427, 435-438, 74 S.Ct. 182, 98 L.Ed. 168 [ (1953) ].”
Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 203, 76 S.Ct. 273, 100 L.Ed. 199 (1956).
The Federal Arbitration Act was originally adopted by Congress to allow merchants, wholesalers, shippers, and other sophisticated parties engaged in commercial and business activities to agree among themselves, in bargained-for contracts, to submit to binding arbitration any disputes that might arise out of their activities in interstate or maritime commerce. See Jean R. Sternlight, Panacea or Corporate Tool?: Debunking the Supreme Court’s Preference for Binding Arbitration, 74 Wash. U.L.Q. 637, 647 (1996), and Jean R. Sternlight, Rethinking the Constitutionality of the Supreme Court’s Preference for Binding Arbitration: A Fresh Assessment of Jury Trial, Separation of Powers, and Due Process Concerns, 72 Tulane L.Rev. 1 (1997). The Supreme Court of the United States has expanded the application of that Act to contracts between retailers and consumers, see, e.g., Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). In Gilmer v. Interstate/Johnson Lane Co., 500 U.S. 20, 25 n. 2, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), it also acknowledged, without reaching the question, that the federal appellate courts have held that the FAA applies to employment contracts, in spite of the express language of 9 U.S.C. § 1 that “nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.” See Tenney Engineering, Inc. v. United Elect. Radio & Mach. Workers of America, 207 F.2d 450 (3d Cir.1953), and cases following. It seems contradictory to say that a contract of employment “involv[es] commerce,” 9 U.S.C. § 2, for the sake of applying the FAA, and then to say that the worker is not “engaged in ... interstate commerce,” 9 U.S.C. § 1, for the sake of refusing to apply the exception to the FAA.
The United States Supreme Court has, however, recognized that under the FAA, 9 U.S.C. § 2, an arbitration provision is “valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (Emphasis added.) See, e.g., First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). The refusal to enforce a purported contract that is one of adhesion and that preserves to the superior party who drafted the contract the right of access to a court and the right to a jury while depriving the inferior party of those rights is certainly a ground that exists in equity for revoking such a contract.
It seems that the majority’s decision will allow employers to present their employees with a document that says, in effect, “If you want to continue working for me, you have to give up your right to take me to court and to have a jury trial to obtain redress for an injury I may cause you to suffer.” Does this apply to workers’ compensation claims? If one employer is allowed to do this, is there anything to stop all employers from doing it and thereby depriving citizens of any opportunity to work without forfeiting their constitutional rights?
I cannot see how the United States Supreme Court, which exists pursuant to the United States Constitution, can apply an Act of Congress so as to undermine the right of trial by jury in the states that guarantee that right in their state constitutions. The United States Constitution guarantees the right of trial by jury in the Seventh Amendment. That Amendment was adopted within the Bill of Rights as a limitation on the Federal Government. Furthermore, the Tenth Amendment provides: “The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people.” If there is any conflict between the Commerce Clause, Art. I, § 8, cl. 3, U.S. Const., and the Bill of Rights, the latter clearly should prevail, because its adoption as a limitation on federal power was crucial to the ratification of the Constitution.
How can the Supreme Court, ignoring the Seventh and Tenth Amendments and state constitutional guarantees of the right of trial by jury, construe an Act of Congress beyond *602 its original intent in such a way as to prevent citizens of the United States and the states from exercising their constitutional right to litigate in court? Neither the Supreme Court nor the Congress has that constitutional authority.
Significant questions in these respects have never been addressed regarding an application of the FAA that deprives individuals of the right of trial by jury based upon a fanciful notion that the individual has “voluntarily” waived that right. I acknowledge the proper application of the Supremacy Clause, U.S. Const. Art. VI, cl. 2,[13] but I am reluctant to concede that the United States Supreme Court has the authority to adopt a construction of an Act of Congress that does the following things: (1) Under the auspices of the Commerce Clause, the Act is construed to undermine the rights of the citizens of the several states to a trial by jury as guaranteed under their state constitutions and under the founding principles of this country.[14] (2) A notion of waiver of constitutional rights is adopted that runs directly counter to the jurisprudence regarding waiver of constitutional rights in all other areas, especially criminal law. (8) The “republican form of government” that Article IV, § 4, of the United States Constitution commands the United States to “guarantee to every state” is seriously undermined by a wholesale removal from the state courts of jurisdiction to resolve disputes. (4) Liberty is curtailed, despite the fact that, as expressed in the Preamble to the United States Constitution “We, the People of the United States, in order to ... secure the blessings of liberty to ourselves and our posterity, do ordain and establish this Constitution for the United States of America.”
The United States Supreme Court has not addressed the application of the Seventh Amendment to the FAA. Even if the Seventh Amendment does not protect a litigant’s right of trial by jury in a state court, surely that right is protected by the Tenth Amendment, quoted above, and the Ninth Amendment, which reads: “The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.” King George’s denial of the right of trial by jury was one of the articles of the Declaration of Independence:
“[The King of Great Britain] has combined with others to subject us to a Jurisdiction foreign to our Constitution, and unacknowledged by our Laws; giving his Assent to their Acts of pretended Legislation:
[[Image here]]
“For depriving us, in many Cases, of the Benefits of Trial by Jury.”
If a state guarantees its citizens the right of trial by jury in civil cases, the power of Congress to regulate commerce should not be taken to supersede all the constitutional protections of the rights of access to court, to due process of law, and to trial by jury. These points seem so fundamental and so obvious to me that I am amazed that they have not heretofore been raised and addressed in the recent flurry of litigation over the Federal Arbitration Act.
I note these thoughts in passing, with the hope that they may be fully addressed before the jurisprudence under the Federal Arbitration Act finally deprives us of the ordered liberty guaranteed by our constitutional system of government. This decision by the majority concerns me. I hope that the citizens of Alabama and the United States are not harmed as badly as it seems to me they *603 will be. Someone should patch our Liberty Bell and ring it again for all to hear!
SHORES, J., concurs.

. The Seventh Amendment to the Constitution of the United States provides: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law.”

. Section 11 of the Alabama Constitution of 1901, together with the preamble to Article I, the Declaration of Rights, provides: “That the great, general, and essential principles of liberty and free government may be recognized and established, we declare: ... That the right of trial by *600 jury shall remain inviolate." The right of trial by jury has been guaranteed in these words in all of the Constitutions of Alabama — in 1819, as Art. I, § 28; in 1861, as Art. I, § 28; in 1865, as Art. I, § 12; in 1868, as Art. I, § 13; in 1875, as Art. I, § 12.

.The Fifth Amendment to the Constitution of the United States, provides, in pertinent part: "No person shall be ... deprived of life, liberty, or property, without due process of law.” The Fourteenth Amendment provides, in pertinent part: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.”

. Section 10 of the Alabama Constitution of 1901 provides: “That no person shall be barred from prosecuting or defending before any tribunal in this state, by himself or counsel, any civil cause to which he is a party." Section 13 provides: "That all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay.”

. That policy was first announced in Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). See Sternlight, Rethinking the Constitutionality, infra, 72 Tulane L.Rev. at 17-18.

. The Supremacy Clause reads: "This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the Constitution or laws of any state to the contrary notwithstanding.” (Emphasis added.) Of course, if the Federal Arbitration Act conflicts with the Constitution of the United States, it is not "the supreme law of the land.”

. The Supreme Court has not, at any time since it began applying the doctrine of selective incorporation of the Bill of Rights into the Fourteenth Amendment, squarely addressed the question whether the Seventh Amendment applies to the states. Even absent the application of the Seventh Amendment directly to the states, its presence in the Bill of Rights .is certainly a limitation on the power of the Congress and the Supreme Court of the United States.